UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JOSEPH WOODS,

                              Petitioner,

        v.                                              9:19-CV-505
                                                        (GLS)
SUPERINTENDENT,

                              Respondent.

─────────────────────────────────

APPEARANCES:                            OF COUNSEL:

JOSEPH WOODS
Petitioner pro se
15-A-2130
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, NY 12821

HON. LETITIA JAMES                      MARGARET A. CIEPRISZ
Attorney for Respondent                 Assistant Attorney General
New York State Attorney General
28 Liberty Street
New York, NY 10005

GARY L. SHARPE
Senior United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

Petitioner Joseph Woods seeks federal habeas corpus relief pursuant to 28 U.S.C.

§ 2254.  Dkt. No. 1, Petition ("Pet.").  Respondent opposes the petition.  Dkt. No. 18,

Memorandum of Law in Opposition ("Resp. Mem."); Dkt. No. 19, Answer; Dkt. Nos. 20-1 &

20-2, State Court Record ("SCR"); Dkt. No. 20-3, State Court Transcripts.  Petitioner replied

to respondent's opposition.  Dkt. No. 25, Traverse; Dkt. No. 27, Exhibit.[1]

For the reasons that follow, the petition is denied and dismissed.

## II.   RELEVANT BACKGROUND

### A.   Plea Hearing

In satisfaction of a two-count indictment, petitioner ultimately pled guilty to fourth

degree criminal possession of a controlled substance on January 29, 2015.  *See People v.*

*Woods*, 150 A.D.3d 1560, 1560 (3d Dep't 2017); *see generally* Dkt. No. 20-3 at 19-42 (plea

hearing transcript).  During the plea hearing, petitioner indicated that he had no issues

reading, writing, or understanding the plea proceedings.  Dkt. No. 20-3 at 23-24.  Petitioner

reported he had sufficient time to discuss the offer with his attorney and, because the plea

deal was for half of the maximum time possible for the reduced charge to which he was

pleading and "significantly less than the maximum on the actual charged crime, which [wa]s

15 years incarceration," petitioner was highly satisfied with the services of his appointed

counsel, Michael Jurena.  *Id.* at 25.

The court then discussed, in detail, the right to remain silent and the right to a trial,

both of which petitioner agreed to give up in consideration for the plea deal.  Dkt. No. 20-3 at

25-27.  Petitioner affirmed he had not been threatened, coerced, or otherwise forced into the

plea and that this plea represented his voluntary choice.  *Id.* at 27.  In sum, petitioner stated

he was pleading guilty because he was guilty.  *Id.* at 27-28.  The court also asked petitioner if

"[i]n consideration of this negotiated plea . . . [he] withdr[e]w all motions that have either been

---

[1]  With the exception of the State Court Record, Dkt. Nos. 20-1, 20-2, which is Bates stamped and consecutively-paginated on the lower right-hand corner of each document, citations to the parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

made or that could be made on [his] behalf, and . . . waive [his] right to a suppression

hearing, and to all other rights and remedies that are [his] in connection with this matter?" *Id.*

at 28-29.  Petitioner agreed, as well as agreeing to waive his right to appeal.  *Id.* at 29.

The court released petitioner on his own recognizance, pending sentencing.  Dkt. No.

20-3 at 31, 35.  However, the court admonished petitioner as follows:

> Let me make this very clear to you[, petitioner].  Should you be
> arrested between today's date and the sentencing date, [the court] will
> consider you to have broken your end of this bargain.  So [the court]
> will no longer be bound by [its] promise of four-and-a-half years. [The
> court] can sentence [petitioner] up to the nine years that [he] face[s]
> on a Class C felony.  Do you understand that, sir?

*Id.* at 31-32.  Petitioner indicated that he did.  The court also explained to petitioner that

> if [the judge] felt a more severe sentence [wa]s necessary as a result
> of some information that comes to [his] attention before the sentence,
> and that would be something that happened before today that [the
> judge did not] know about.  In other words, the probation department
> does their presentence investigation and tells [the judge that petitioner
> has] a conviction . . . in some other state that [the judge] do[es]n't
> know about today . . . if [he] were to find out something had happened
> before today that [he] didn't know about today, and [he] fe[lt] that [he]
> could no longer give that four-and-a-half year sentence, [he] would let
> [petitioner] have [his] plea back and we would be back to where we
> were at the start of the day.

*Id.* at 33.  Petitioner agreed, and then petitioner allocuted that he was in possession of an

excess of 1/8th of an ounce of crack cocaine at the time of his arrest and pled guilty to the

charge above.  *Id.* at 34-35.[2]  Petitioner also waived his right to contest that he is a second

felony offender, accepting that the court will be sentencing him as such.  *Id.* at 37-38.

Finally, the court concluded by reiterating the warning above.  *Id.* at 40.  Specifically, the

---

[2] The felony complaint also states that the arresting officer viewed a plastic, tie-off bag, containing twenty-four individual tied-off baggies, in the petitioner's underwear.  SCR at 11.

court closed by saying

> Additionally, and we referenced this earlier, if [petitioner is] arrested
> – and [he is] going to be out. [He is] not going to be in jail from now
> until the sentencing date. [He is] going to be out. So, if [petitioner is]
> arrested – I didn't say convicted – if [petitioner is] arrested for a crime
> between today and the sentencing date, again, [the court] will
> consider [the petitioner] to have broken [his] end of the bargain, so
> [the judge is] not bound by [his].

*Id*. at 40. Petitioner again indicated understanding and acceptance. *Id.*

## B. Subsequent Court Appearances

On March 13, 2015, petitioner returned to court for what was to be his sentencing hearing. Dkt. No. 20-3 at 44. Instead, testimony indicated that petitioner had allegedly made two additional drug sales, one before and one after his plea. *Id.* at 45-47. The prosecution shared its intention to charge petitioner for the post-plea sale; therefore, the matter was adjourned for the possibility of a global plea deal and petitioner was remanded to custody. *Id.* at 47-50.

On April 21, 2015, petitioner again appeared in court, this time with retained counsel, Lee Kindlon. Dkt. No. 20-3 at 53. The court reiterated the plea deal, as well as its admonition that "should [petitioner] be arrested . . . on any charge during the pendency of the period of time between plea and sentence, that in fact the [petitioner] would face an enhanced sentence." *Id.* at 53. Petitioner had been rearrested and incarcerated based upon the drug sale which preceded his January plea; however, there was also uncharged criminal conduct, resulting from a controlled buy in March, which existed. *Id.* at 54. The court indicated that petitioner could plead guilty to a nine-year-sentence with three years of post-release supervision, which would reflect a global settlement in full satisfaction of any and all charges concerning the pre- and post- drug sale and/or possession. *Id.* at 55. Petitioner

4

declined the offer and exclaimed that Kindlon no longer represented him. *Id.* at 55-56. The court adjourned the matter for two weeks so that petitioner could secure different representation. *Id.* at 56. Concurrently, the prosecutor indicated he was presenting the post-plea criminal conduct to the grand jury. *Id.*

On May 8, 2015, petitioner again appeared in court and indicated he could not retain counsel. Dkt. No. 20-3 at 60. The court provided petitioner with one more chance to find representation. *Id.* at 65-67.

### C.   Sentencing

On May 14, 2015, petitioner appeared for sentencing. Dkt. No. 20-3 at 68-88. Because petitioner was unable to retain new counsel, the court appointed Jennifer Sober. *Id.* at 69. The court again reiterated the facts surrounding the plea, its admonition to petitioner, and the subsequent criminal conduct of petitioner's alleged pre- and post-plea drug sales. *Id.* at 69-71.

The possibility of a global settlement was discussed. Dkt. No. 20-3 at 72, 74. The prosecution renewed its offer of nine years incarceration in full satisfaction of the open arrest charge, pending indictment, and current case. *Id.* at 74. Sober indicated that she had spoken with petitioner four times that day and expressed her support for the deal. *Id.* at 74-75. Sober also shared that she explained this to the petitioner and his father, as well as how petitioner's actions subsequent to his plea served to break his plea bargain with the court. *Id.* 75. Petitioner declined the offer. *Id.* at 78.

The court, thereafter, sentenced petitioner as a second felony offender. Dkt. No. 20-3 at 78-88. The prosecution moved for an enhanced sentence, presenting the court with information that the petitioner was charged with criminal sale of a controlled substance, the

same crime petitioner had already pled guilty to, and the indictment was pending before another judge in the same court. *Id.* at 80.  The court then imposed its sentence, noting that, because the presently-indicted charged conduct occurred after the plea took place and before the date of the sentencing, petitioner violated the terms of the agreement and the court was no longer bound to a four-and-one-half year sentence. *Id.* at 84.  Instead, the judgment of the court sentenced petitioner to seven years incarceration with three years supervision. *Id.*  Petitioner immediately challenged the sentence enhancement, contending that he was never arrested for the post-plea sale, thus, he had not broken the express provisions issued by the court. *Id.* at 86-87.  The prosecution confirmed that petitioner "ha[d] been arrested on the indictment based on the sale that happened after the plea." *Id.* at 87. At that point, the court ordered petitioner be transferred to the other judge in the court for arraignment on his post-plea drug sale indictment and otherwise concluded the proceedings. *Id.*

### D.    First Motion to Vacate Judgment

While petitioner's direct appeal was pending, petitioner filed his first motion to vacate his judgment pursuant to New York Criminal Procedure Law § 440.10 ("440 motion").  SCR at 1-19.  Petitioner argued that he was entitled to relief because (1) he was arrested without probable cause; (2) his counsel was ineffective; and (3) there were "issues that occurred off the record." *Id.* at 2, 8.  Petitioner contended that his counsel, Michael Jurena, was constitutionally ineffective because (a) he "insisted that [petitioner] take the [plea] offer;" (b) he failed to file either a motion to dismiss or motion to suppress evidence; (c) he failed to properly investigate the case prior to advising petitioner what he should do; (d) he failed to communicate with petitioner about viable defenses to his charges; and (e) advised petitioner

6

that law enforcement was not acting illegally when they searched him if law enforcement suspected petitioner of carrying drugs.  *Id.* at 5-6.  Petitioner also asserted that his second counsel, Lee Kindlon, "explained . . . that [petitioner] had a right to get his plea back and that he would see to it that he got his plea," until he arrived in court whereupon he continued to advise and persuade petitioner to take the enhanced plea deal for nine years.  *Id.* at 7.  The People opposed the motion.  *Id.* at 20-29.  Thereafter, petitioner filed a reply and supplemental documents in support.  *Id.* at 30-40.

On March 16, 2017, Albany County Court denied petitioner's 440 motion.  SCR at 41-43.  With respect to petitioner's arguments about lack of probable cause, the court held that petitioner "forfeited his right to raise this issue by entering a knowing, voluntary, and intelligent guilty plea before a suppression hearing was held."  *Id.* at 42 (citations omitted).  Further, the court determined that petitioner's ineffective assistance of counsel claims "must be denied without a hearing [because petitioner] . . . failed to set forth adequate non-record material facts that, if established, would entitle him to 440 . . . relief," and that, in any event, petitioner "failed to demonstrate the absence of strategic of other legitimate explanations for the alleged shortcoming by his various counsel."  *Id.* at 43.  Lastly, the court held that "[b]eyond the issues raised above, [petitioner] d[id] not set forth any other matters that are outside the record."  *Id.*

Petitioner sought leave to appeal County Court's denial.  SCR at 45-69.  On May 11, 2017, the application was denied.  *Id.* at 70.

### E.    Direct Appeal

Petitioner filed a counseled brief on direct appeal.  SCR at 71-87.  As is relevant to the present action, petitioner argued he was entitled to relief because the trial court erred when it

7

enhanced his sentence without allowing him to withdraw his guilty plea. *Id.* at 78-80.

The New York State Appellate Division, Third Department, affirmed the conviction. *Woods*, 150 A.D.3d at 1562; *see* SCR at 227-29 (Third Department Memorandum and Order). The Third Department rejected petitioner's arguments that, because he had not been physically arrested as a result of his post-plea indictment, he had not breached the terms of the agreement. *Woods*, 150 A.D.3d at 1561. Specifically, the appellate court explained

> [a]s is evident from the record, the no-arrest condition was imposed by the court to discourage [petitioner] from committing additional crimes subsequent to the entry of his guilty plea while he was out on bail pending sentencing. [Petitioner], however, was arrested during this time for a crime that he committed prior to entering his guilty plea and he was incarcerated as a result. [Petitioner]'s incarceration obviated the need to physically detain him on the charge of criminal sale of a controlled substance that arose from his post-plea criminal conduct. This criminal conduct, which resulted in an indictment, was implicitly proscribed by the conditions of the plea agreement and provided a legitimate basis for enhancement of the sentence. Accordingly, Supreme Court did not err in imposing an enhanced sentence under the circumstances presented.

*Id.*

Petitioner filed a counseled leave application to the New York Court of Appeals asserting, among other things, that the trial court erred in enhancing his sentence without allowing petitioner to withdraw his plea. SCR at 230-31. On July 28, 2017, the Court of Appeals denied petitioner's application for leave to appeal. *Id.* at 232.

**F.    Second Motion to Vacate**

On February 21, 2018, petitioner filed his second CPL 440.10 motion. SCR at 233-309 ("second 440 Motion"). Petitioner contended he was entitled to relief because (1) court-appointed counsel Jurena was ineffective because he (a) withheld evidence from petitioner,

specifically that he was arrested based on a controlled buy which never took place, and (b)

incorrectly advised petitioner that law enforcement had a valid search warrant to strip search

him (*id.* at 240-41); (2) the guilty plea was not knowing, intelligent or voluntary because (a)

petitioner "never agreed to a plea bargain [whereupon] . . . his sentence could be enhanced

by an uncharged crime," and (b) when petitioner pled, he believed the police had lawfully

strip searched him (*id.* at 242); and (3) the prosecutor committed misconduct by knowingly

presenting false evidence to the grand jury, namely that petitioner never committed the drug

transaction (*id.* at 243-44).  The People opposed petitioner's motion.  *Id.* at 310-16.

Petitioner filed a reply.  *Id.* at 317-19.[3]

Albany County Court denied the motion.  SCR at 329-33.  Specifically, the court held

that petitioner "forfeited his right to raise [issues about lack of probable cause] . . . by

entering a knowing, voluntary and intelligent guilty plea before a suppression hearing was

held."  *Id.* at 331.  Further, the content of petitioner's plea negated any challenges to the

veracity or sufficiency of the evidence and his contentions about ineffective assistance of

counsel failed to demonstrate prejudice.  *Id.* at 331-32.  Moreover, while not specifically

addressing the individual arguments supporting petitioner's allegations of ineffective

assistance of counsel, the court held that petitioner's arguments involving the nature of his

guilty plea were records-based and properly brought upon direct appeal; therefore, the

second 440 motion was an inappropriate vehicle to challenge such claims.  *Id.*  Further, "[t]o

the extent [petitioner] . . . raised matters outside the record, the [c]ourt f[ou]nd them to be

---

[3] Petitioner also filed a motion to set aside his sentence, pursuant to New York Criminal Procedure Law § 440.20, because the trial court allegedly erred in determining petitioner was a violent felon.  SCR at 320-27.  This claim is not presently before the Court for review.  However, it was denied by Albany County Court, along with his second motion to vacate, on December 6, 2018.  *Id.* at 329-33.

wholly conclusory and insufficient to warrant a hearing or any further discussion." *Id.*

Petitioner filed an application for leave to appeal with the Third Department. SCR at 334-478. On January 31, 2019, the Third Department denied the application. *Id.* at 479.[4]

## III.    PRESENT PETITION

Petitioner contends that he is entitled to federal habeas relief because (1) petitioner's Fourth Amendment rights were violated when he was illegally searched and arrested without probable cause (Pet. at 5-6); (2) petitioner's counsel was ineffective (*id.* at 7-8); (3) there was prosecutorial misconduct, namely demonstrated by the indictment being based on false evidence (*id.* at 8-10); (4) the plea was neither voluntary nor knowing (*id.* at 10-11); and (5) the trial court erred when it failed to facilitate the withdrawal of petitioner's plea after the plea agreement was violated (*id.* at 16).

## IV.    DISCUSSION

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[4] On June 18, 2018, petitioner also filed a motion for a writ of error coram nobis contending that his appellate counsel was constitutionally ineffective. SCR at 480-534. Petitioner's motion was denied by the Third Department on July 26, 2018, and the Court of Appeals denied leave to appeal on September 26, 2018. *Id.* at 535, 541.

Petitioner also filed a third 440 motion, arguing he was entitled to relief because his trial counsel was ineffective for failing to challenge the propriety of a search warrant for his girl friend's apartment and during the subsequent suppression hearing. SCR 542-43. Albany County Court denied petitioner's motion. *Id.* 542-47.

Petitioner failed to renew any of these claims in his present petition.

proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185

(2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465,

473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be

given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)

(quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may

overturn a state court's application of federal law only if it is so erroneous that 'there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with th[e

Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per

curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*,

569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on

§ 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on

'an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to

second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37,

132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779).  A state court's

findings are not unreasonable under §2254(d)(2) simply because a federal habeas court

reviewing the claim in the first instance would have reached a different conclusion. *Wood v.

Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court

believes the state court's determination was incorrect but whether that determination was

unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct

unless a petitioner rebuts that presumption with "'clear and convincing evidence.'"  *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)).  "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings."  *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]"  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

### B.     Fourth Amendment Violation (Ground One)

As raised in his first 440 motion, petitioner contends that he is entitled to federal habeas relief because he was arrested without probable cause and subjected to an illegal search and seizure.  Pet. at 5-6.  Respondent argues that petitioner's claims are not cognizable and that, even if they were, his knowing and voluntary plea bars their review. Resp. Mem. at 13-15.  Petitioner replied that his plea was not knowing and voluntary, but ill-advised, because he could not have been meeting a confidential informant (CI) for a drug transaction when the CI was arrested three hours prior to the meeting.  Traverse at 3, 7.

Petitioner's Fourth Amendment claim is foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976).  Pursuant to *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief[.]"  428 U.S. at 482; *accord Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002).  The bar created by the Supreme Court in *Stone* "applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause[.]"  *McCray*, 2017 WL 3836054, at *6 (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam)).

The only requirement under *Stone* is that the state provide a petitioner the "opportunity" to litigate a Fourth Amendment claim. *McPhail v. Warden*, *Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). Therefore, habeas review is only available: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *accord Hirsh v. McArdle*, 74 F. Supp. 3d 525, 532-533 (N.D.N.Y. 2015).

The Second Circuit has recognized that New York provides adequate procedures to redress Fourth Amendment violations. *Capellan*, 975 F.2d at 70 & n.1 (citing a motion to suppress evidence, pursuant to CPL § 710.10 *et seq*., as a "facially adequate" and "approved" procedure for adjudicating alleged Fourth Amendment violations); *see also, e.g*, *Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing CPL § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims).

> [O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.

*Graham*, 299 F.3d at 134.

Here, petitioner did not avail himself of a suppression hearing; however, that is immaterial to the present analysis. As previously discussed, all that is required is the opportunity to engage in the state court remedy. *Graham*, 299 F.3d at 134. Instead of

13

pursuing said remedy, during the colloquy with the court, petitioner explicitly agreed to "waive [his] right to a suppression hearing." Dkt. No. 20-3 at 28-29. The availability of a remedy and petitioner's choice not to pursue it divests him of the right to now claim a Fourth Amendment violation unless he can demonstrate a failing of the state remedy. However, petitioner completely fails to argue that he was precluded from pursuing a suppression hearing due to an "unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 70. Instead, petitioner presents arguments to support his claim that his plea was neither knowing nor voluntary. Such claims are insufficient to demonstrate that petitioner was denied an opportunity to litigate his Fourth Amendment claims.

Accordingly, petitioner has failed to state a cognizable claim.

Moreover, it is important to note that his conviction was rendered pursuant to a guilty plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutionally required] standards[.]

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (explaining that where a petitioner provides a counseled guilty plea, "the issue is not the merits of [petitioner's] independent claims . . . but rather whether the guilty plea had been made intelligently and voluntarily with the advice of

14

competent counsel.") (internal quotation marks and citations omitted).

"Since Fourth Amendment rights are nonjurisdictional, a knowing and voluntary guilty plea waives claims stemming from an alleged Fourth Amendment violation." *Taylor v. Unger*, No. 1:11-CV-1078, 2012 WL 5288733, at *4 (W.D.N.Y. Oct. 23, 2012) (citing *inter alia United States v. Arango*, 966 F.2d 64, 66 (2d Cir. 1992)).  While petitioner argues that his guilty plea was not knowing and voluntary, for the reasons stated below, those claims are meritless. Accordingly, even if petitioner had proffered a cognizable claim, his plea served to waive it.

### C.   Coerced Guilty Plea/Ineffective Assistance of Counsel  (Grounds Two and Four)

Petitioner contends, as he did in both his 440 motions, that his guilty plea was not intelligently or voluntarily given because his counsel was constitutionally ineffective.  Pet. at 7-8.  Specifically, petitioner's first counsel, Jurena, allegedly coerced him into taking the guilty plea because Jurena knew that petitioner's arrest was not supported by probable cause.  *Id.* at 7.  This was allegedly demonstrated by a note Jurena included on petitioner's file.  *Id.* at 10.  Further, petitioner asserted that all three of his counsel – Jurena, Kindlon, and Sober – "denied [him his] right to sufficient counsel by not working in [his] best interest and keeping the truth about [his] cases defenses hidden from [him]."  *Id.*

Respondent argues that petitioner's claims are unexhausted and meritless.  Resp. Mem. at 15-25.  Specifically, respondent contends that (1) nothing in the record supports that Jurena coerced petitioner's plea, (*id.* at 15-22); (2) the claims against Sober were unexhausted and conclusory, (*id.* at 22-23); and (3) the claims against Kindlon were vague and meritless, (*id.* at 22-25).

Petitioner replies that his plea was unconstitutional because he could not rationally

weigh his options.  Traverse at 8.  Specifically, petitioner relies on *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001), for the proposition that his plea should be negated due to ineffective assistance because, in that case, the court found counsel inadequate where he knew the inmate was stopped without probable cause.  *Id.* at 9.

>    **1.    Jurena**

"A claim of ineffective assistance of counsel can be asserted where there was improper coercion from . . . counsel to accept the guilty plea."  *United States v. Hanford*, 5:14-CR-0273 (GTS), 2016 WL 8670498, at *5 (N.D.N.Y. Oct. 25, 2016) (denying § 2255 claims that petitioner's plea was coerced due to constitutionally ineffective counsel).  To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different such that the petitioner suffered prejudice.  *See Premo*, 562 U.S. at 121-22 (noting that petitioner "must show both deficient performance by counsel and prejudice") (citation and internal quotation marks omitted); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Because "this case involves a guilty plea, petitioner would have to show that, but for counsel's allegedly deficient performance, he would not have pleaded guilty."  *Marziale v. Walker*, No. 9:97-CV-0512 (NAM/GLS), 2000 WL 33767759, at *3 (N.D.N.Y. May 4, 2000) (citing *Hill v. Lockart*, 474 U.S. 52, 58 (1985)).

In order to comply with constitutional due process protections, a guilty plea must be knowing, voluntary and intelligent.  *See United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Brady v. United States*, 397 U.S. 742,

748 (1970)).  "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]."  *Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 304 (N.D.N.Y. 2008) (quoting *Hill*, 474 U.S. at 56) (quotation marks omitted).

In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements."  *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).

> [T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

Here, petitioner's claims that Jurena coerced him and his plea was involuntarily rendered were denied in both of his 440 motions, with County Court citing to petitioner's guilty plea.  SCR at 42-43, 321-32.  Accordingly, AEDPA's deferential standard of review governs and relief can only be granted if the state court decision was a contrary or unreasonable application of federal law.  Review of the record indicates that the state court

17

properly applied Supreme Court precedent.

The plea allocution indicated that petitioner had sufficient time to discuss all of the options with his attorney, petitioner understood all of the rights that he was waiving, petitioner was doing so under his own free will, and petitioner was competent to do so.  Dkt. No. 20-3 at 23-24.  Moreover, County Court emphasized, and petitioner acknowledged, his satisfaction with his representation because the plea deal was for four and one-half years as opposed to the fifteen year maximum that petitioner was exposed to with the original charge.  *Id.* at 25. Lastly, petitioner admitted his guilt; specifically, his action of possessing more than 1/8 ounce of cocaine at the time of his arrest.  *Id.* at 34-35.  Given the strong presumption of veracity given to these on-the-record statements, the state court decisions to deem petitioner's plea knowing, intelligent, and voluntary were consistent with Supreme Court precedent.

Furthermore, nothing that petitioner has presented in his Petition or Traverse refutes such claims.  Petitioner first generally argues that he was coerced and could not rationally weigh his options.  Pet. at 7.  As previously noted, the sworn testimony during the allocution indicates otherwise.  Petitioner's present assertions are wholly contradicted by the record, thus, they are insufficient to entitle petitioner to relief.  *See Blackledge*, 431 U.S. at 73-74.

Petitioner next contends that a note on his file indicates that he was given improper legal advice.  However, upon reading the note in its entirety, it is clear that petitioner's assertion is patently incorrectly.  Specifically, the note states that petitioner flagged a "P[os]s[i]ble illegal stop" but it was "[e]xplained [to petitioner that] this was a rip op that will provide p[robable] c[ause]."[5]  SCR at 268; *see id.* at 265 (flow sheet indicating that "after a

---

[5] "[I]n a rip operation, police have a [confidential informant] arrange for a drug transaction with a targeted suspect and then arrest the suspect at the outset of the transaction, before any drugs or money change hands." *People v. Williams*, 177 A.D.3d 1178, 1183 n.4 (3rd Dep't 2019).

18

buy bust/rip operation [petitioner] was found in possession of 12.4 grams of crack cocaine located in 24 individual tie-offs" and that "although he wasn't charged with a sale, this was an agreement to sell which is suppficinet to charge a sale[.]").   Accordingly, Jurena's conclusion was not that there was an issue with probable cause supporting the arrest.  Conversely, it was the exact opposite.  Petitioner's present assertions are wholly contradicted by the record, thus, they are again insufficient to entitle petitioner to relief.  *See Blackledge*, 431 U.S. at 73-74.

Petitioner lastly contends that the holding from *Northrop* compels a different result. Traverse at 9.  However, *Northrop* is not binding precedent on this Court.  Even if it were, while petitioner asserts the correct legal proposition – where reasonable counsel would suspect probable cause is lacking and a motion to suppress should be filed, counsel is deemed ineffective where he instead encourages his client to plead guilty – the facts of the present case are completely different.  *Northrop*, 265 F.3d at 383-385.  For the reasons stated above, petitioner's Fourth Amendment is barred and the verdict would not have been different because, given the admissions he made in court, petitioner was guilty of drug possession.  Therefore, petitioner's arguments are insufficient to establish that the state court failed in properly applying Supreme Court precedent.

### 2.     Kindlon

Petitioner contends that attorney Kindlon "denied [him his] right to sufficient counsel by not working in [his] best interest and keeping the truth hidden from [him.]"  Pet. at 7. Petitioner does not further identify what the deficiency was in the representation or what defenses were not disclosed.  "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a

19

viable claim for habeas relief." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). Here, no such details were provided. Accordingly, petitioner has failed to allege a viable claim for relief. *Id.* (citing cases holding that vague and conclusory allegations are insufficient to support an ineffective assistance of counsel claim).

Liberally construing the state court record, to the extent petitioner intended to reassert his claim from his 440 motion, such claim is similarly denied. Specifically, petitioner argued that Kindlon "explained . . . that [petitioner] had a right to get his plea back and that he would see to it that he got his plea," until he arrived in court whereupon he continued to advise and persuade petitioner to take the enhanced plea deal for nine years. SCR at 7. All that petitioner has to support this contention are his own self-serving statements, which have been flatly denied by Kindlon. *See* SCR 281. For the reasons stated above, conclusory allegations alone are insufficient to demonstrate entitlement to relief for ineffective assistance. *Kimbrough*, 949 F. Supp. 2d at 355.

Moreover, County Court denied the argument as meritless, explaining that petitioner failed to show "the absence of strategic or other legitimate explanations for the alleged shortcoming by his various counsel." *Id*. at 43. This holding is consistent with Supreme Court precedent. "A [petitioner] has no absolute right to withdraw his plea of guilty . . . [i]t [is petitioner's] burden to persuade the trial court that he had good grounds to withdraw his guilty plea." *United States v. Williams*, 23 F.3d 629, 634-35 (2d Cir. 1994).

Here, liberally construing the record and submissions, petitioner contends that his pre-plea arrest and indictment should have entitled him to withdraw his plea. SCR at 7. County Court advised petitioner that he would only be permitted to withdraw his plea if new information arose regarding criminal conduct occurring before the plea was taken. Dkt. No.

20-3 at 31-33, 40.  While petitioner did have a pre-plea arrest, withdrawal was never

broached because County Court decided that petitioner had broken the terms of the plea

agreement, leading to the enhanced sentence.  *Id.* at 70-73.  Specifically, the basis for the

county court's decision that petitioner had broken his end of the bargain was his post-plea

arrest for the same crime for which he had previously pled guilty.  *Id.*  Accordingly,

> even assuming *arguendo* that counsel's failure to . . . request
> permission to withdraw [petitioner's] guilty plea fell below the
> objectively minimum threshold standards under *Strickland*, petitioner
> has suffered no prejudice, since it is clear that the court was under no
> obligation to permit the petitioner to withdraw his guilty plea under the
> circumstances.

*Rivera v. Superintendent, Wyoming Corr. Facility*, No. 9:03-CV-1058 (DNH), 2006 WL

2946265, at *8 (N.D.N.Y. Oct. 12, 2006).  The state court's determination, alluding to the fact

that a strategic and legitimate explanation supported Kindlon's decision not to seek

withdrawal of the plea, is a reasonable application of Supreme Court precedent.

### 3.   Sober

Petitioner also argues that attorney Sober "denied [him his] right to sufficient counsel

by not working in [his] best interest and keeping the truth hidden from [him.]" Pet. at 7.

Petitioner does not further identify what the deficiency was in her representation or what

defenses were not disclosed.  Sober only represented petitioner on the day of his

sentencing.  Dkt. No. 20-3 at 69.

Petitioner never made any mention of Sober's representation during the course of his

direct appeal or 440 motions.  Accordingly, it is questionable whether the claim has been

21

properly exhausted.[6]  Regardless, petitioner fails to provide any further detail regarding his specific claims against Sober.  Given the lack of specificity, petitioner's claim, as stated, fails to provide any basis for relief.  *Kimbrough*, 949 F. Supp. 2d. at 355 (explaining "a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective," or else such claims fail to meet the demanding standard imposed upon petitioners).

### D.      Prosecutorial Misconduct (Ground Three)

Petitioner again argues, as he did in his second 440 motion, that there was prosecutorial misconduct because the prosecutor procured the indictment from the grand jury using false evidence.  Pet. at 8-10.  Respondent opposes the argument contending that the claim is foreclosed by petitioner's guilty plea.  Resp. Mem. at 25-26.

As previously discussed, "it is well settled that a guilty plea represents a break in the chain of events which has preceded it in the criminal process and [petitioner] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Williams v. Gonyea*, No. 9:16-CV-0460 (JKS), 2017 WL 4990645, at *5 (N.D.N.Y. Oct. 31, 2017) (quoting *Tollett*, 411 U.S. at 267) (quotation marks omitted).  Instead, petitioner is limited to "attack[ing] the voluntary and

---

[6]  An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii).  To properly exhaust his claims, petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that he raise all claims in state court prior to raising them in a federal habeas corpus petition.  Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).  In other words, Petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. *See Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).

intelligent character of the guilty plea by showing that the advice he received from counsel was not within acceptable standards." *Id.* (internal quotation marks and citations omitted).[7]

Therefore, "[b]ecause the events which give rise to this claim [of prosecutorial misconduct] occurred prior to [petitioner's] guilty plea, the claim is foreclosed by the *Tollett* bar." *Id.*; *see Pena v. Sheahan*, No. 1:15-CV-2455, 2018 WL 3639927, at *15 (S.D.N.Y. June 22, 2018) ("[I]n light of [petitioner's] knowing and voluntary guilty plea, his prosecutorial misconduct claims are irrelevant to the constitutional validity of his conviction and, thus, cannot be the basis for federal habeas review.") (citing *Haring v. Prosise*, 462 U.S. 306, 321 (1983) (explaining that when a petitioner "is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized," as the plea is a break in the chain of events); *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) ("[A] guilty plea . . . conclusively resolves the question of factual guilty supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilty a non-issue[.]").

Therefore, petitioner's claim is barred by his knowing and voluntary plea.

### E.    Enhancement of Sentence/Departure from Plea Agreement (Ground Five)

Petitioner asserts, as he did on direct appeal, that the trial court erred in departing from the negotiated sentence and imposing an enhanced sentence on him without allowing him to withdraw his plea.  Pet. at 16.  Specifically, petitioner contends that the sentencing

---

[7]  For the reasons previously stated, petitioner has failed to adequately argue that his plea was involuntary or his counsel ineffective.

court should have conducted an *Outley* hearing[8] and that it was improperly "satisfied with a mere indictment . . . and an arrest warrant," to prove the existence of a post-plea charge sufficient to declare that petitioner had violated the terms of the plea.  Pet. at 16; Traverse at 11.  Respondent contends that an *Outley* hearing is a state law remedy that is not cognizant on habeas review and that petitioner's claims are meritless.  Resp. Mem. at 26-28.[9]

Here, petitioner's claim that his sentence was incorrectly enhanced because the plea deal should have instead been withdrawn was denied in his direct appeal.  *Woods*, 150 A.D.3d at 1561.  Accordingly, the AEDPA's deferential standard of review governs and relief can only be granted if the state court decision was a contrary or unreasonable application of federal law.  Review of the record indicates that the state court properly applied Supreme Court precedent.

Supreme Court precedent states "that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause."  *Gardner v. Florida*, 430 U.S. 349, 358 (1977).

> However, subsequent to the Court of Appeals' decision in *Outley* in 1993 and continuing after the Second Circuit's decision in [*Torres v. Berbary*, 340 F.3d 63 (2d Cir. 2003)], courts have found that a

---

[8]  In *People v. Outley*, the Court of Appeals refused to institute a rule that "the court must conduct an evidentiary hearing to satisfy itself by a preponderance of the evidence that the defendant has, in fact, committed the [postplea] crime for which he was arrested," and, instead, determined that "[w]hen an issue is raised concerning the validity of the postplea charge or there is a denial of any involvement in the underlying crime, the court must conduct an inquiry at which the defendant has an opportunity to show the arrest is without foundation."  80 N.Y.2d 702, 713 (1993).

[9]  While respondent contends that an *Outley* hearing is solely a state law issue, the *Outley* decision relies on federal precedent – namely a district court decision denying a § 2254 habeas petition -- when determining the appropriate standard by which to decide whether postplea criminal conduct can justify departure from the plea terms.  *Outley*, 80 N.Y.2d at 713 (citing *Innes v. Dalsheim*, 680 F. Supp. 517 (E.D.N.Y. 1988), *judgment rev'd by*, 864 F.2d 974 (2d Cir. 1988) (granting habeas petition and remanding back to district court where Second Circuit determined petitioner's due process rights were violated because he was not clearly informed of the consequences of breaching the plea agreement)).  Accordingly, petitioner's contentions were sufficient to put the state court on notice regarding the federal constitutional nature of his claims.

24

> [petitioner's] post-plea indictment on a new criminal charge, and the sentencing court's review of that indictment, constitutes a "legitimate basis" to conclude that [petitioner] breached a condition of his sentence and, thus, comports with the requirements of due process.

*Desio v. Terbush*, No. 1:05-CV-3933, 2007 WL 1300987, at *8 (E.D.N.Y. May 3, 2007) (citing cases); *see Coleman v. Rick*, 281 F. Supp. 2d 549, 560 (E.D.N.Y. 2003) (holding that "the legitimate basis for petitioner's arrest was satisfactorily established by virtue of the grand jury's return of an indictment against petitioner with respect to that incident[.]".)

Here, petitioner contends that his "no arrest" condition was never triggered to break the plea because he was never arrested for his post-plea criminal charges.  Pet. at 16; Traverse at 11.  This is a because petitioner was already in custody and incarcerated from the pre-plea indictment which had been handed down.  *See Woods*, 150 A.D.3d at 1561. "New York courts have repeatedly upheld the practice of imposing an enhanced sentence for breach of a plea condition . . . at least where the finding of breach is based upon the [petitioner's] post-plea arrest and indictment."  *Desio*, 2007 WL 1300987, at *11. Accordingly, even though petitioner was already incarcerated and did not require being re-arrested, a sentence enhancement based upon an indictment for post-plea criminal activity has been deemed sufficient to satisfy both state and federal due process protections.

While petitioner does not explicitly appear to argue that the conditions of his plea were vague or otherwise ambiguous, to the extent the petition can be read to assert such contentions, they would be meritless.  When deciphering the terms of a plea agreement, the main question "is what the parties to th[e] plea agreement reasonably understood to be the terms of the agreement."  *Desio*, 2007 WL 1300987, at *11 (quoting *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982), *cert. denied*, 459 U.S. 1116 (1983) (internal quotation

25

marks omitted)).  "Thus, the crucial issue here is whether the imposed sentence comports with the reasonable understanding and expectations of the [petitioner] as to the sentence for which he bargained . . . resolving any ambiguity in the agreement in favor of the . . . petitioner." *Id.* (internal quotation marks and citations omitted).

Here, consistent with the federal precedent cited above, the state court determined that the plain terms of the plea, specifically the no-arrest condition, was intended "to discourage [petitioner] from committing additional crimes subsequent to the entry of his guilty plea while he was out on bail pending sentencing." *Woods*, 150 A.D.3d at 1561.  During the plea hearing, the trial court repeatedly warned, and petitioner repeatedly acknowledged, that failure to abide by this condition would lead to a sentence enhancement.  Dkt. No. 20-3 at 31-32, 40.  Petitioner failed to abide by the condition.  The state court's determination that petitioner's subsequent "criminal conduct, which resulted in an indictment, was implicitly proscribed by the conditions of the plea agreement and provided a legitimate basis for enhancement of the sentence," represents a fair and reasonable understanding of the expectations set upon the parties and the plea for which petitioner bargained.  *Woods*, 150 A.D.3d at 1561.  In sum, the state court's holding that petitioner's plea terms were not ambiguous, petitioner did violate said terms, and the subsequent criminal indictment served as a legitimate basis for the resulting sentence enhancement are all reasonable applications of federal precedent and comport with due process protections.

Therefore, petitioner's claim for relief on this ground is denied.

V.     **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED** in its entirety;

26

and it is further

ORDERED that no Certificate of Appealability shall issue because petitioner failed to

make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2)

requires[10]; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on the parties in

accordance with the Local Rules.

IT IS SO ORDERED.

July 6, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

[10] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).